

FILED
MAR 31 2009

UNITED STATED DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| YANKTON SIOUX TRIBE HEAD START CONCERNED PARENTS | * * * * | CIV. 08-4058 |
| Plaintiffs, | * * * | MEMORANDUM OPINION AND ORDER |
| vs. | * * * |  |
| LONGVIEW FARMS, LLP | * * |  |
| Defendant. | * * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs, Yankton Sioux Tribe Head Start Concerned Parents, have brought an action seeking a judgment from this Court declaring that Defendant, Long View Farms LLP is in violation of numerous federal statutes through its continued construction of a farrowing operation in Charles Mix County, South Dakota. (Doc. 1.) Plaintiffs also seek an injunction suspending further construction until such time as Defendant complies with the applicable regulations. (Doc. 1.) In addition to the injunctive relief requested by Plaintiffs in their initial Complaint, Plaintiffs have also filed a motion for order for immediate injunctive relief and restraining order, Doc. 39, and Motion for Evidentiary Hearing and Discovery in support of the motion, Doc. 38.

On June 19, 2008, the Court held a hearing regarding Plaintiffs' motion for immediate injunctive relief and restraining order. The purpose of the hearing was to determine whether the farrowing facility was being constructed on land considered Indian Country. After hearing testimony and evidence presented by both parties, the Court concluded that the facility was located on non-Indian owned fee land.

Defendant has moved to dismiss all the claims as stated in Plaintiff's Complaint, or in the alternative, has moved for a more definite statement. (Doc. 10.) In response, Plaintiff filed a Motion to Strike Defendant's Motion to Dismiss. (Doc. 40.)

## LEGAL STANDARD

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Because the pleading rules require only "notice" pleading, rather than detailed fact pleading, a court must construe a plaintiff's allegations liberally, and should only dismiss a complaint if a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

In deciding whether to dismiss, a court may consider only the facts alleged in the pleadings, documents attached as exhibits[1] or incorporated by reference in the pleadings,[2] and public documents.[3]

## DISCUSSION

Plaintiffs have filed a Complaint for Declaratory and Injunctive Relief against Defendant

---

[1] *Stahl v. USDA*, 327 F.3d 697, 700-01 (8th Cir. 2003) (finding that district court properly considered contract documents that were attached to motion to dismiss without converting motion into one for summary judgment).

[2] *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citing *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D. Minn. 1997) (stating that may consider extra-pleading material "necessarily embraced by the pleadings" including documents incorporated by reference)).

[3] *Stahl*, 327 F.3d at 700-01 (finding that district court properly considered certain public records in ruling on a motion to dismiss under Rule 12(b)(6)).

alleging that Defendant violated various federal regulations and asking for an injunction ordering Defendant to cease constructing its farrowing operation. In particular, Plaintiffs allege that: (1) Defendant's farrowing operation was not presented to the Yankton Sioux Tribe for consideration in accordance with the Yankton Sioux Constitution Article 1, section 1; (2) Defendant violated the National Environmental Protection Act by failing to provide an environmental impact statement and by failing to provide for public participation and appeals prior to construction of the facility; (3) Defendant violated the National Historic Preservation Act by failing to ascertain the presence of historic and cultural resources which could be affected by the facility's construction and operation on a cultural and historic site; (4) Defendant violated the Administrative Procedures Act by failing to provide for public participation and appeals prior to the construction of the farrowing facility; (5) Defendant's actions violate Article VI of the United States Constitution; and (6) Defendant is in violation of the Clean Water and Clean Air Acts. (Doc. 1.)

Defendant has moved to dismiss all the claims as stated in Plaintiff's Complaint, or in the alternative, has moved for a more definite statement. (Doc. 10.)

In response, Plaintiffs have moved to strike Defendant's Motion to Dismiss. (Doc. 40.) In their memorandum in support of their motion, Plaintiffs contend that Defendant's Motion to Dismiss is an "insufficient, redundant, immaterial, and impertinent defense," because Plaintiffs' claims are "nonfrivolous" and the rights asserted in the Complaint "are not petty or trivial." Plaintiffs also contend that Defendant's arguments in support of its Motion to Dismiss are based on laws that are "not applicable" to the present case or are 'based on new laws and rules not made final or exact" and that Defendant merely seeks to cause "needles increase in the cost of litigation" and to "cause unnecessary delays." Furthermore, Plaintiffs argue that federal laws such as the National Environmental Protection Act and the National Historic Preservation Act serve to protect their rights within the external boundaries of the reservation as established by treaties in 1851 and 1858. Plaintiffs contend that the original exterior boundaries of the reservation remain intact and that the reservation has not been diminished. The Tribe believes the reservation boundaries to be larger than what is set forth in the Court's Order in *Yankton Sioux Tribe v. Podhrasdsky*, No. 98-4042, 2006 WL

3703274 (D.S.D. Dec. 13, 2006)[4] and has appealed the Court's decision on that basis.

## Claim 1: Failure to present farrowing operation to Yankton Sioux Tribe in accordance with the Yankton Sioux Constitution Article 1, section 1.

Plaintiffs request that the Court order a halt to the construction of Defendant's farrowing operation because it "was not presented to the Yankton Sioux Tribe for consideration in accordance to (sic) the Yankton Sioux Constitution Article 1, section 1." Although Plaintiffs cite the Yankton Sioux Constitution as the basis for their claim to relief, Plaintiffs attached the Amended By-Laws of the Yankton Sioux Tribal Business and Claims Committee ("Bylaws") to their Complaint, and it appears that Plaintiffs are relying upon the language in the Bylaws rather than the Yankton Sioux Constitution. Article 1, Section 1 of the Bylaws provides,

> All Tribal Business other than of a routine nature which would involve Indian Legislation shall be voted on by secret ballot at a polling place, time and place of such voting to be determined and designated by the Committee. Notice shall be posted at proper places throughout the reservation at least thirty (30) days and not more than sixty (60) days in advance of such voting.

Bylaws, Article 1, Section 1.

Defendant argues, and the Court agrees, that there is no evidence in the record which supports Plaintiffs' contention that Defendant is required under the Yankton Sioux Constitution or Bylaws to submit their plans for the farrowing operation to the Tribe for a vote. Under the terms of Article 1, Section 1 of the Bylaws, only *tribal businesses* other than a routine nature *which would involve Indian Legislation*, are required to seek the prior approval, by popular vote, of the Business and Claims Committee. Nowhere in their Complaint do Plaintiffs allege that Defendant is an Indian entity, an entity comprised of Indians or members of the Yankton Sioux Tribe.

---

[4]This case is now referred to as *Yankton Sioux Tribe v. Gaffey*, as Defendant, Matt Gaffey, replaced Defendant, Scott Podhradsky, as State's Attorney of Charles Mix County midway through the litigation.

4

Most importantly, however, because Defendant is a non-Indian entity, the Tribe may not regulate its activities if the Court finds that the location of the farrowing facility is on non-Indian fee land outside the boundaries of the reservation. *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1091 (8th Cir. 1998) (stating that "[n]either Montana nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations."). It appears that Plaintiffs believe the Tribe has jurisdiction to regulate the activities of Defendant because Defendant's facility is located within the 1851 and 1858 Treaty boundaries of the Yankton Sioux Tribe. However, the United States Supreme Court found in *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 358, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998) that the Yankton Sioux Reservation had been diminished and remanded the case back to this Court to decide what remains of the Reservation. *Yankton Sioux Tribe v. Gaffey*, No. 98-4042, 2006 WL 3703274 (D.S.D. Dec. 13, 2006).

During the hearing in the present case regarding Plaintiff's Motion for Immediate Injunctive Relief, and Motion for Restraining Order, the Court concluded that the land on which the farrowing facility was being constructed was not within the reservation boundaries. The Court rendered this conclusion by comparing the land in question to a map of the diminished reservation which had been submitted as evidence on remand in the *Gaffey* case.

The Tribe does not have regulatory authority over the construction of the farrowing facility by Defendant, a non-Indian entity, because such facility is located on land which is not within reservation boundaries. Any claim by Plaintiffs that Defendant need present the farrowing operation to Yankton Sioux Tribe in accordance with the Article 1, section 1 of the Bylaws or Yankton Sioux Constitution is therefore without merit and must be dismissed.

**Claim 2: National Environmental Protection Act (NEPA) Claim**

Plaintiffs seek a judgment from this Court declaring that Defendants violated the National Environmental Protection Act (NEPA) by failing to provide an environmental impact statement and

by failing to provide for public participation and appeals prior to construction of the facility. Plaintiffs request an injunction suspending further construction of Defendant's farrowing operation until Defendant complies with these requirements.

The Court grants Defendant's motion to dismiss Plaintiffs' NEPA claim because NEPA requirements apply only to federal agencies and not to private entities like Defendant in this case. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756-57, 124 S.Ct. 2204, 2209, 159 L.Ed.2d 60 (2004) (stating that NEPA "imposes only procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions."). Section 4332 of the NEPA states, in pertinent part,

> The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all *agencies of the Federal Government* shall . . . include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on the environmental impact of the proposed action....

42 U.S.C. § 4332 (emphasis added). The regulations implementing NEPA further provide that "*Agencies shall*: (a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures, (b) Provide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected." 40 C.F.R. § 1506.6 (emphasis added).

The only way in which the Court would have power to enjoin the activities of a non-federal agency under NEPA is if it is shown that the non-federal agency is in 'partnership' with the federal government. *Monarch Chem. Works, Inc. v. Exon*, 452 F.Supp. 493, 501 (D.C. Neb. 1978) (citing *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974)). "The presence of federal funds is typically sufficient to establish such a relationship." *Id.* (citations omitted).

Plaintiffs have not alleged that Defendant is a federal agency nor that it has received federal

6

funds establishing a 'partnership' between Defendant and the federal government which would entitle Plaintiffs to relief under NEPA. Therefore, Plaintiffs' NEPA claim is dismissed. There is no requirement that Defendant provide an environmental impact statement or for public participation and appeals under the statute.

**Claim 3:    National Historic Preservation Act (NHPA) Claim**

In their Complaint, Plaintiffs seek a judgment from the Court declaring that Defendant has violated the National Historic Preservation Act (NHPA) by failing to ascertain the presence of historic and cultural resources which could be affected by the facility's construction and operation on a cultural and historic site. Plaintiffs request an injunction suspending further construction until Defendant complies with these requirements.

The Court finds that NHPA regulations apply only to federally assisted undertakings and not to the activities of private entities such as Defendant. NHPA provides in pertinent part:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.

16 U.S.C. § 470f. Congress has defined "undertaking" in the NHPA as:

> [A] project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including– (A) those carried out by or on behalf of the agency; (B) those carried out with Federal financial assistance; (C) those requiring a Federal permit license, or approval; and; (D) those subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency.

16 U.S.C. § 470w(7).

The Court grants Defendant's motion to dismiss Plaintiff's NHPA claim. Plaintiffs have failed to allege facts indicating that: (1) the hog farrowing facility is a "Federal or federally assisted undertaking;" or that (2) Defendant is an entity such as a Federal agency or an independent agency having the authority to license such an undertaking, which is obligated to comply with NHPA requirements. The NHPA claim alleged by Plaintiffs is therefore dismissed.

**Claim 4:     Administrative Procedures Act (APA) Claim**

Plaintiffs allege that Defendant is in violation of the Administrative Procedures Act ("APA") for failing to provide for public participation and appeals prior to the construction of the farrowing facility. Under Section 706 of the APA, Courts may "set aside *agency action* . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(a), (d) (emphasis added).

The Court grants Defendant's motion to dismiss Plaintiffs' APA claim because there is no evidence in the record indicating that Defendant is a federal agency subject to the APA. Defendant, rather, is a private entity.

**Claim 5:     Article VI of the United States Constitution**

Plaintiffs allege that Defendant's actions also violate Article VI of the United States Constitution. Clause 1 of Article VI of the United States Constitution provides,

> All debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation.

U.S. Const. art. VI, cl. 1. Clause 2 of Article VI provides,

> This Constitution, and the Laws of the United States which shall be made in

> Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the judges in every state shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2. Article VI, Clause 3 states,

> The Senators and Representatives before mentioned, and the Members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States.

U.S. Const. art. VI, cl. 3.

Plaintiffs do not specifically state which Clause of Article VI they believe Defendant has violated, but presumably it is Clause 2 since Plaintiffs contend that the 1851 and 1858 treaty boundaries of the Yankton Sioux Reservation are still intact and thus that Defendant's farrowing facility is on reservation land[5]. This claim must be dismissed for failure to state a claim upon which relief may be granted. As stated previously in this opinion, the United States Supreme Court found in *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 358, 118 S.Ct. 789, 805, 139 L.Ed.2d 773 (1998) that the reservation has been diminished and as a result, the 1851 and 1858 treaty boundaries are no longer intact.

**Claim 6:    Clean Water and Clean Air Act Claims**

Plaintiffs state, with respect to their claims under the Clean Water Act and Clean Air Act, the following:

> Plaintiff Yankton Sioux Tribe Head Start Concerned Parents is an unincorporated

---

[5]The Court finds that Plaintiffs have stated no other facts which would entitle them to any sort of relief pursuant to Article VI of the United States Constitution.

entity of the tribe in the state of South Dakota. For the purpose of Environmental Health and Safety of our children ages 3 to 5 years old and a high quality of service to children and families living near and attending Yankton Sioux Tribe Head Start facility located 2.2 miles downwind, downstream of the Long View Farms LLP farrowing operation jeopardizing the Yankton Sioux Tribe Head Start Federal Grant violating Clean Water Act, Clean Air Act and etc... in accordance to SF 424B. The Yankton Sioux Tribe Head Start Concerned Parents work, live and recreate on the land surrounding said facility. Many Tribal Members live in the town of Marty 3.2 mile of the facility polluting air, water and release of odors and degrade landscape where families live and recreate the project will also harm artifacts, remains and other historic significant materials and sites that are a cultural, spiritual and personal importance to the Yankton Sioux Tribe Head Start Concerned Parents which will include the Missouri River located only 4 miles downstream and the aquifer underneath this facility.

"The Clean Water Act . . . prohibits the discharge of pollutants into navigable waters unless the discharge is sanctioned by a permit or statute. Permits are issued by the EPA or by state agencies subject to EPA review. The [Clean Water] Act also gives states the authority to establish water quality standards for waters within their boundaries, to certify compliance with those standards, and to issue and enforce discharge permits, all under the watchful eye of the EPA." *Wisconsin v. EPA,* 266 F.3d 741, 743-44 (7th Cir. 2001) (internal citations omitted).

Although both the Clean Water Act and the Clean Air Act allow for citizen suits against private entities, each Act has a provision which requires notice to be given to the Administrator of the Environmental Protection Agency (EPA), to the State in which the alleged violation occurs, or to any alleged violator at least sixty days prior to commencing an action alleging a violation of either Act. 33 U.S.C. § 1365(b); 42 U.S.C. § 7604(b).

Plaintiffs have cited nothing in their Complaint stating that they have provided the appropriate notice before commencing this suit alleging a violation of either the Clean Water Act or the Clean Air Act. Because a suit under these statutes cannot be commenced prior to giving the appropriate notice, these claims are dismissed.

The Court finds that Plaintiffs' claims should also be dismissed on the basis that they have

failed to set forth sufficient facts to establish violations of either Act. Section 1365 of the Clean Water Act provides that "any citizen may commence a civil action on his own behalf – (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator [of the EPA] or a State with respect to such a standard or limitation." 33 U.S.C. § 1365. Section 7604 of the Clean Air Act provides that "any person may commence a civil action on his own behalf–(1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator [of the EPA] or a State with respect to such a standard or limitation." 42 U.S.C. § 7604. Plaintiffs have failed to cite any facts to support a claim that Defendant may be in violation of (1) an effluent standard or limitation or an order issued by the Administrator of the EPA in violation of the Clean Water Act; or (2) an emission standard or limitation or order issued by the Administrator of the EPA or State in violation of the Clean Air Act. Accordingly, Plaintiffs' Clean Water and Clean Air Act claims are dismissed for failure to state a claim upon which relief may be granted.

It is hereby ORDERED that:

(1) Defendant's Motion to Dismiss, Doc. 10, be GRANTED and that Plaintiff's Motion to Strike Defendant's Motion to Dismiss, Doc. 40, be DENIED. Plaintiffs' claims are dismissed with prejudice except that Claims 3 (National Historic Preservation Act) and 6 (Clean Water and Clean Air Act) are dismissed without prejudice. The dismissal of these claims does not mean, as Plaintiffs' contend in their Motion to Strike, that their concerns are "petty or trivial," but rather that they have failed to state a claim upon which relief may be granted.

(2) Defendant's Motion for More Definite Statement, Doc. 10, be DENIED as moot.

(3) Plaintiffs' Motion for Immediate Injunctive Relief and Restraining Order, Doc. 39,

be DENIED as the alleged violations upon which this request for relief is based have been dismissed by the Court in the present memorandum opinion and order.

(4) Plaintiffs' Motion for Evidentiary Hearing and Discovery, Doc. 38, be DENIED as moot.

Dated this 31st day of March, 2009.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Summer Wahpi
DEPUTY